**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DALE CHAPPELL | **HONORABLE KAREN M. WILLIAMS**<br><br>No. 24-CR-243 (KMW)<br><br>**OPINION** |

**WILLIAMS, District Judge:**

**THIS MATTER** comes before the Court upon Defendant Dale Chappell's ("Defendant") Omnibus Motion (Dkt. No. 55) to dismiss or consolidate Counts Three, Four, and Five of the Indictment as multiplicitous, and to compel the Government to disclose the grand jury minutes. Counts Three, Four, and Five charge Defendant with securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78ff, and Rule 10b-5, 17 C.F.R. § 240.10b-5, based on sales of Humanigen, Inc. stock on three different dates. (Dkt. No. 1 at 1, 14–15.) Defendant argues that the counts punish a single act three times because each charged sale resulted automatically from Rule 10b5-1 trading plans he executed on June 15, 2021. (Dkt. No. 56 ("Def.'s Br.") at 35–38.) The Government responds that each charged sale is a distinct securities transaction and therefore a permissible unit of prosecution. (Dkt. No. 61 ("Gov't Opp.") at 20–25.)

Defendant also contends that the Government may have misled the grand jury concerning the use of material nonpublic information and the significance of his asserted good-faith reliance on professional advice and compliance approvals. (Def.'s Br. at 13–15, 23–27; Dkt. No. 64 ("Def.'s Reply") at 3–9.) At the hearing, the Court ordered production of the grand jury materials for *in camera* review. (Dkt. No. 69 at 54–55, 57–60.) Having completed that review and considered the parties' arguments, the Court **DENIES** both requests for the reasons below.

## I. BACKGROUND

The Indictment alleges that Defendant was the chief scientific officer and a director of Humanigen, a publicly traded biopharmaceutical company, and that he possessed material nonpublic information concerning the Food and Drug Administration's review of Humanigen's drug candidate, lenzilumab. The Government alleges that Defendant used that information to sell Humanigen securities. (Dkt. No. 1 ¶¶ 1, 2(a)–(c), 4–5.)

Relevant here, the Indictment alleges that on June 15, 2021, Defendant executed Rule 10b5-1 trading plans for three investment funds he controlled. Those plans proposed the sale of approximately 3.36 million Humanigen shares with a triggering price of $17, beginning the following day, and sales thereafter occurred pursuant to the plans between June and August 2021. (Dkt. No. 1 ¶ 5(o).) Counts Three, Four, and Five charge securities fraud based on sales occurring on June 16, June 25, and July 23, 2021, respectively. The Indictment identifies approximately 158,486 shares sold on June 16 at $19.41 per share; 1,000,000 shares sold on June 25 at $17.80 per share; and 5,584 shares sold on July 23 at $17.04 per share. (*Id.* at 15.)

Defendant does not dispute for purposes of this motion that those are separate sales. Rather, he contends that they cannot support separate criminal counts because, after he executed the plans, his broker mechanically executed trades according to the plans' predetermined terms without further instructions or discretionary trading decisions by Defendant. (Def.'s Br. at 36–38; Def.'s Reply at 15–17.) In his view, the allegedly deceptive act was complete when he entered the plans while allegedly possessing material nonpublic information and certifying otherwise. The Government, by contrast, maintains that the substantive Section 10(b) offenses occurred when the securities transactions were executed and that each charged transaction involved transaction-specific facts. (Gov't Opp. at 21–25.)

In support of disclosure, Defendant points to the Indictment's quotation of Humanigen's insider-trading policy and its references to his possession of nonpublic information. He contends that those allegations, together with statements in search-warrant applications, suggest that the grand jury was instructed that possession alone sufficed. He separately argues that the treatment of professional advice and compliance approvals suggests that the grand jury was not properly instructed about good faith. (Def.'s Br. at 13–15; Def.'s Reply at 3–8.) The Government responds that the Indictment alleges trading "on the basis of" material nonpublic information and that Defendant's proposed inferences do not establish a particularized need for disclosure. (Gov't Opp. at 5–13.) At the hearing, the Court directed the Government to submit both the legal instruction and evidentiary transcripts for *in camera* review. (Dkt. No. 69 at 54–55, 57–60.)

## II. LEGAL STANDARD

### a. Motion to Disclose Grand Jury Minutes

Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) permits disclosure when a defendant "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." The defendant must demonstrate "a particularized need for the requested information that outweighs the public interest in secrecy." *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989). That inquiry requires consideration of whether disclosure is needed to avoid a possible injustice, whether that need exceeds the need for continued secrecy, and whether the request covers only the material needed. *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979). Although the interests supporting secrecy may diminish after a grand jury concludes its work, they do not disappear. *Id.* at 222–23. The Court has substantial discretion in balancing those interests. *McDowell*, 888 F.2d at 289.

The Government is not required to present substantial exculpatory evidence to the grand jury, and an otherwise valid indictment cannot be challenged merely because the evidence presented was inadequate or incomplete. *United States v. Williams*, 504 U.S. 36, 51–55 (1992). That limitation on challenges to the evidentiary presentation does not excuse an erroneous legal instruction; the Court must distinguish an asserted instructional defect from a disagreement over the weight or completeness of the evidence.

**b. Motion to Dismiss Counts Three, Four, and Five**

An indictment is multiplicitous when it charges the same offense in two or more counts. *United States v. Pollen*, 978 F.2d 78, 83 (3d Cir. 1992). Multiplicity implicates the Double Jeopardy Clause because it may expose a defendant to multiple punishments for a single offense. *Id.*; *United States v. Stanfa*, 685 F.2d 85, 86–87 (3d Cir. 1982). Where, as here, multiple counts charge violations of the same statutory provision, the Court must determine the allowable "unit of prosecution" Congress intended. *Pollen*, 978 F.2d at 85; *United States v. Haddy*, 134 F.3d 542, 548 (3d Cir. 1998). The inquiry begins with the statutory text; if the text is ambiguous, courts may consider legislative history and the statutory scheme, with unresolved ambiguity ultimately construed in the defendant's favor under the rule of lenity. *Pollen*, 978 F.2d at 85.

Section 10(b) makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance" in contravention of SEC rules. 15 U.S.C. § 78j(b). Rule 10b-5, in turn, prohibits employing a "device, scheme, or artifice to defraud"; making a material misstatement or omission; or engaging in an "act, practice, or course of business" that operates as a fraud or deceit, in connection with the purchase or sale of a security. 17 C.F.R. § 240.10b-5.

## III. DISCUSSION

The Court first addresses disclosure of the grand jury minutes in light of its *in camera* review, then considers whether Counts Three, Four, and Five are multiplicitous.

### a. Motion to Disclose Grand Jury Minutes

Having reviewed the grand jury materials, the Court concludes that disclosure to the defense is unwarranted. The review does not substantiate Defendant's contention that the Government improperly instructed the grand jury concerning the use of material nonpublic information or good faith. Considered in context, the presentation complied with the applicable requirements and disclosed no instructional error or procedural irregularity supporting the asserted grounds for disclosure.

Defendant's arguments concerning the Indictment's references to Humanigen's policy, statements in search-warrant applications, and the Government's treatment of compliance approvals warranted consideration, but the Court has now evaluated the actual grand jury presentation rather than relying solely on inferences from those sources. (*See* Def.'s Br. at 13–15; Def.'s Reply at 3–8.) The Court's review did not reveal the instructional defects that Defendant asserts. This ruling is limited to those asserted defects in the grand jury proceeding; it does not determine whether Defendant used material nonpublic information or acted in good faith. Those merits questions remain for resolution in the prosecution.

To the extent Defendant separately challenges the omission of evidence supporting his account of the transactions, that disagreement does not establish an entitlement to the minutes. *Williams*, 504 U.S. at 51–55. The Court recognizes his argument that good faith bears on the required mental state, rather than merely furnishing an affirmative defense. (Def.'s Reply at 6–8.) But that argument does not establish that the grand jury was improperly instructed, and the Court's

review revealed no such defect. Defendant remains free to present his good-faith arguments and other defenses at trial.

Finally, even accounting for the diminished secrecy interests asserted by Defendant and his request for limited disclosure, he has not demonstrated a particularized need for the materials. (Def.'s Reply at 8–9.) A narrower request and reduced secrecy interests do not dispense with the requirement to demonstrate a need for disclosure. *See Douglas Oil*, 441 U.S. at 222–23. The Court has evaluated the claimed defects through *in camera* review and found no basis to conclude that disclosure is necessary to avoid an injustice. The request to disclose the grand jury minutes is therefore **DENIED.**

**b. Motion to Dismiss Counts Three, Four, and Five**

The parties' dispute is narrow. Defendant says the relevant unit of prosecution is his June 15 execution of the Rule 10b5-1 plans because that was his only discretionary act. The Government says the relevant units are the later securities transactions through which the alleged insider trading was carried out. The Court concludes that Counts Three, Four, and Five are not multiplicitous on their face.

***i. Haddy* Does Not Make the Trading Plans the Exclusive Unit of Prosecution**

The Third Circuit's decision in *Haddy* supplies the controlling framework. There, the defendants were charged with separate Section 10(b) counts for schemes to manipulate the stock of three companies. 134 F.3d at 548. The defendants argued that each individual purchase or sale within each manipulation scheme should instead have been charged separately. *Id.* The Third Circuit rejected that argument because, on the facts before it, the individual trades were merely steps in broader manipulative schemes; without the other components of the manipulation, a

particular purchase or sale might not itself have been unlawful. *Id.* at 548–49. The appropriate unit of prosecution in that case was therefore each discrete manipulation scheme. *Id.* at 549.

But *Haddy* expressly declined to adopt an "inflexible rule" governing the unit of prosecution in every securities-fraud case. *Id.* The court recognized that other Section 10(b) violations may "lend themselves to a differently enumerated indictment." *Id.* In doing so, *Haddy* discussed *United States v. Langford*, 946 F.2d 798 (11th Cir. 1991), which held that several interstate communications associated with the same securities transaction could not be charged as separate Section 10(b) offenses merely because each involved a separate use of an interstate instrumentality. *Haddy*, 134 F.3d at 549 (discussing *Langford*, 946 F.2d at 803–04). *Haddy* understood *Langford* to permit something less than an entire fraudulent scheme to constitute the unit of prosecution, including a fraudulent statement connected to a discrete securities sale. *Id.*

Thus, *Haddy* does not establish, as Defendant suggests, that all securities transactions flowing from a common antecedent act must be charged as one offense. It instead directs the Court to examine the nature of the alleged Section 10(b) violation. *See id.* at 548–49. That distinction matters here. Unlike *Haddy*, where the individual trades were not necessarily fraudulent standing alone and instead served as steps in a stock-manipulation scheme, the Government alleges that Defendant committed insider trading through distinct sales of Humanigen securities while acting on the basis of material nonpublic information. (Gov't Opp. at 21–25.)

#### *ii.* The Charged Sales May Be Treated as Distinct Uses of the Allegedly Deceptive Conduct

The nature of insider-trading liability reinforces that conclusion. Under the classical theory, Section 10(b) and Rule 10b-5 are violated when a corporate insider trades in the corporation's securities on the basis of material nonpublic information in breach of a duty arising from the insider's relationship of trust and confidence. *United States v. O'Hagan*, 521 U.S. 642, 651–52

(1997) (citing *Chiarella v. United States*, 445 U.S. 222, 228–29 (1980)). The Supreme Court has emphasized in the related misappropriation context that the fraud is consummated when the information is used to purchase or sell securities: the securities transaction and the breach of duty "coincide." *Id.* at 656. That principle is difficult to reconcile with Defendant's premise that, once he executed the Rule 10b5-1 plans, all later transactions necessarily merged into a single completed Section 10(b) offense.

Counts Three through Five identify different sales occurring on different dates, involving different quantities of shares and different prices. (Dkt. No. 1 at 15.) The Government therefore must establish the charged securities transaction associated with each count and that the requirements for insider-trading liability existed in connection with that transaction. As the Government notes, facts material to liability could differ over time: information alleged to be nonpublic could become public, for example, or other circumstances relevant to a particular trade could change. (Gov't Opp. at 21–22.) The fact that the trades were initiated pursuant to previously established plans does not erase the separate securities transactions through which the alleged fraud was consummated.

Authority outside this Circuit points in the same direction. In *United States v. Dioguardi*, the Second Circuit upheld separate punishments for securities-fraud counts arising from purchases on successive days and stated that "each transaction in a securities fraud case constitutes a separate offense." 492 F.2d 70, 83 (2d Cir. 1974). The Court does not read *Dioguardi* to establish a categorical rule for every Section 10(b) prosecution; *Haddy* forecloses such an inflexible approach in this Circuit. *See* 134 F.3d at 549. But *Dioguardi* confirms that separate securities transactions may, depending on the fraudulent conduct alleged, support separate substantive counts even when they form part of a broader course of conduct. *See* 492 F.2d at 83; *see also United States v.*

*Regensberg*, 604 F. Supp. 2d 625, 630–31 (S.D.N.Y. 2009) (concluding that Section 10(b) does not require every fraudulent transaction within an overall scheme to be charged in a single count).

**_iii._ *Langford* Does Not Require a New False Statement for Each Charged Insider Trade**

Defendant principally responds that *Langford* requires each Section 10(b) count to identify both a separate securities transaction and a separate false statement connected to that transaction. (Def.'s Reply at 16–17.) *Langford* stated that, to avoid multiplicity in the prosecution before it, each count had to be based on a separate purchase or sale and specify a false statement of material fact connected to that purchase or sale. 946 F.2d at 804. But the context of that holding is important. *Langford* involved several counts differentiated by separate mailings or other interstate instrumentalities, all tied to the same underlying securities transaction. *Id.* at 803–04. The Eleventh Circuit rejected the Government's effort to transform those separate jurisdictional uses into separate Section 10(b) offenses. *Id.*

This case presents the converse situation: the Government has not divided one securities transaction into several counts based on separate communications. It has charged separate securities sales occurring on separate dates. And the charged theory is insider trading, for which the alleged deception is not necessarily a new affirmative misrepresentation made to the market with every sale. *See O'Hagan*, 521 U.S. at 651–56. *Haddy* itself characterized *Langford* as establishing that a discrete transaction can support a unit of prosecution smaller than an overall scheme; it did not adopt a universal requirement that every Section 10(b) count must rest on a newly uttered false statement. 134 F.3d at 549. *Langford* therefore does not require dismissal or consolidation here.

### *iv.* The Court Need Not Decide the Maximum Number of Transactions the Government Could Charge

Defendant also argues that the Government's theory has no principled stopping point. He notes that his broker executed sales under the same plans on numerous other dates and in multiple batches, and he contends that the Government's position could permit dozens or even thousands of counts based on a single decision to enter the plans. (Def.'s Reply at 15–17.) That argument identifies a potential outer-boundary question, but it does not establish that the three counts actually returned by the grand jury are multiplicitous.

*Haddy* cautions against an inflexible rule that every individual purchase or sale must constitute a separate offense. 134 F.3d at 549. The Court therefore does not hold that every broker execution or every sale made pursuant to a Rule 10b5-1 plan necessarily constitutes a separately chargeable Section 10(b) offense. The narrower question is whether Counts Three, Four, and Five must be treated as one offense solely because the charged sales arose from plans Defendant executed on one earlier date. For the reasons noted above, neither Section 10(b) nor the controlling authorities require that result. The three counts identify distinct securities transactions on separate dates, and Defendant has not shown that Congress required those transactions to be collapsed into a single unit of prosecution.

## IV. CONCLUSION

Counts Three, Four, and Five are not multiplicitous merely because the charged securities transactions were executed pursuant to Rule 10b5-1 plans Defendant entered on June 15, 2021. *Haddy* requires a context-specific inquiry into the nature of the Section 10(b) violation alleged and does not make an overall scheme—or an antecedent trading instruction—the mandatory unit of prosecution in every securities-fraud case. Because the Indictment charges distinct securities sales occurring on separate dates, Defendant has not established that Counts Three, Four, and Five

charge the same offense multiple times. His motion to dismiss or consolidate those counts is therefore **DENIED**.

The Court also **DENIES** Defendant's request to disclose the grand jury minutes because its *in camera* review disclosed no instructional error or procedural irregularity supporting the asserted grounds for disclosure, and Defendant has not demonstrated a particularized need that outweighs the interests in continued secrecy.

The Court will enter an appropriate Order consistent with this Opinion.

Dated: October 28, 2026

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE